Thomas J. GREEN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1-1179A310.

Court of Appeals of Indiana,
First District.

April 29, 1980.

Rehearing Denied June 2, 1980.

Frank E. Spencer, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Thomas J. Green was convicted of the offense of operating a motor vehicle when adjudged an habitual traffic offender under Ind.Code 9–4–13–13[1] and received a sentence of two (2) years with all but one hundred eighty (180) days suspended. He appeals said conviction. We affirm.

## STATEMENT OF FACTS

The facts most favorable to the State as disclosed by the evidence are that Green was adjudged an habitual traffic offender by the Rush Circuit Court on October 5, 1976, pursuant to a written order entered by the court reading as follows:

### "ORDER OF SUSPENSION

Comes now the State of Indiana, Ex. Rel., Ralph W. Vannatta, Commissioner of Bureau of Motor Vehicles of the State of Indiana, by William B. Keaton, Prosecuting Attorney, and comes now the respondent, Thomas J. Green, in person. This matter having been set for hearing and the Court having heard evidence on the petition heretofore filed now finds that the allegations of the petition are true. The Court further finds that on the date of the filing of the petition herein the respondent was a resident of Rush County, Indiana. The Court further finds that the respondent, Thomas J. Greene, is an habitual traffic offender as defined by I.C: § 9–4–13–1 et seq.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED by the Court that the driving privileges of Thomas J.

Green be and hereby are suspended for a period of ten (10) years. It is further ordered that the Clerk of the Rush Circuit Court deliver a certified copy of this order to the Bureau of Motor Vehicles of the State of Indiana, and a copy of this order to William B. Keaton, Prosecuting Attorney, 65th Judicial Circuit, and the respondent herein."

A certified copy of the order was introduced in evidence through testimony of the Clerk of the Rush Circuit Court, and the official court reporter of that court testified that Green, the defendant in this case, was the same person as the one who was subject to the said order.

On May 30, 1978, Green's next-door neighbor, Shaw, who was also a special deputy sheriff in Rush County, saw Green get into his pickup truck and drive away. Shaw notified the Rushville police. Thereafter, Captain Sheehan of the Rushville police department saw Green driving his truck on the city streets in Rushville, followed him over streets and an alley to Green's place of business, and observed Green, the sole occupant of the truck, emerge from the truck and go to the building. Sheehan asked Green what he was doing driving, and Green responded that he was tired of walking. Sheehan knew that Green had been adjudged an habitual traffic offender and arrested Green for the offense which is the subject of this action. Green testified in his own behalf, and, on cross-examination, admitted that the order adjudging him to be an habitual traffic offender was still in effect.

## ISSUES

1. Whether the evidence to support the conviction is insufficient in that the State did not establish by any evidence that Green, having been adjudged an habitual traffic offender, operated a motor vehicle

---

1. Ind.Code 9–4–13–13 provides:

"It shall be unlawful for any person who has been adjudged an habitual traffic offender under the provisions of this chapter [9–4–13–1—9–4–13–18] to operate any motor vehicle, which is required to be registered, on public thoroughfares or on private property which is commonly used by the motoring public in this state while the order of the court prohibiting such operation remains in effect."

(IC 9–4–13–13 has been repealed and replaced by IC 9–4–13–14 effective July 1, 1978.)

required to be registered, on a public thoroughfare while the order of the court prohibiting such operation remained in effect.

2. Whether the judgment is contrary to law in that there was no evidence that there was in effect an order directing Green not to operate a motor vehicle on the streets and highways of this state for a period of ten (10) years.

## DECISION

*Issues One and Two*

█ Green raises essentially the same question by both specifications of error, namely that the judgment is not supported by sufficient evidence and is contrary to law because there is no evidence that there was in effect any court order directing Green not to operate a motor vehicle on the streets and highways of this state for a period of ten (10) years. We disagree.

The statute upon which this prosecution is based (IC 9–4–13–13), makes it a crime for any person who has been adjudged an habitual traffic offender under IC 9–4–13–1 to 9–4–13–18 to operate any motor vehicle, which is required to be registered, on public thoroughfares or certain designated private property *while the order of the court prohibiting such operation remains in effect.* The order of court prohibiting such operation is required by IC 9–4–13–10 [2] which reads, insofar as applicable, as follows:

"At the time and place designated in the order, the court shall hold a hearing upon the show cause order. If the court finds that the defendant is not the person named in the abstracts, or that he is not an habitual traffic offender as defined in section 3(a) [9–4–13–3(a)], the proceeding shall be dismissed. If the court finds that the defendant is the same person named in the abstracts and that the defendant is an habitual traffic offender as defined in section 3(a), the court shall so find and adjudge the defendant an habitual traffic offender, and shall by appro-

priate order direct the person so adjudged to surrender to the court his license to operate a motor vehicle, *and by further order direct the person so adjudged not to operate a motor vehicle on the streets and highways of this state for a period of ten [10] years . . . ."* (Emphasis added.)

As pointed out in our statement of facts the order in this case provides "that *the driving privileges of Thomas J. Green be and hereby are suspended for a period of ten (10) years."* (Emphasis added.) Green contends that this is not an order prohibiting him from operating a motor vehicle on the streets and highways of this state for a period of ten (10) years, and, consequently, there being no such order of prohibition, there can be no conviction in this case. For reasons which we shall state, we cannot accept Green's interpretation of the court's order.

The order in question suspended Green's driving privileges for a period of ten (10) years. While we have not found or been directed to any Indiana case in which the meaning of such suspension is declared, courts in other jurisdictions have dealt with this precise issue. The Appellate Court of Illinois in *People v. Dillingham,* (1969) 111 Ill.App. 161, 249 N.E.2d 294, has held that a person whose operator's license has been suspended is under a mandatory duty to cease driving. At 249 N.E.2d 296, that court said:

"While a mandatory duty to cease driving when confronted by police is a realistic standard for a unit of the offense of eluding police, it is irrelevant to the violation of driving on a suspended license *as the defendant was under a mandatory duty to cease driving during the entire time he was operating his automobile* regardless of any intervention of the police." (Emphasis added.)

In holding that a person whose driver's license was suspended was not a "qualified licensed driver" within the meaning of that term as used in an automobile rental con-

**2.** IC 9–4–13–10 was amended effective July 1, 1978. The amendment is not material to this case.

tract, the Court of Appeals of Ohio in *Hadden v. Curry Ford, Inc.*, (1970) 27 Ohio App.2d 132, 272 N.E.2d 901, 903, stated:

"Consequently, when Dennis Lilly's driver's license was suspended, it was inoperative as a license for a period of time, and, therefore, his privilege to operate a motor vehicle upon the highways of this state was withdrawn for that period."

In 60 C.J.S., *Motor Vehicles*, § 164.48, p. 929, it is stated that *"[t]he effect of a revocation or suspension of a license to drive a motor vehicle is to terminate the license or privilege to drive from the date of the revocation or suspension."* (Emphasis added.)

Thus, we are of the opinion that an order suspending driving privileges is tantamount to an order directing a person not to operate a motor vehicle upon the highways. While the order of the court is not in the precise language of IC 9–4–13–10 and is not to be recommended as a model for such orders, nevertheless, we believe that it clearly and adequately advises the defendant that his privilege of operating a motor vehicle has been terminated for the stated period, and, as such, is, in effect, an order prohibiting him from operating a motor vehicle upon the streets and highways of this state.

Green directs the court to cases holding that penal statutes reach no further in meaning than their words and cannot be extended, by interpretation, to cover situations not precisely within the words employed in the statutes.[3] Green urges that application of the holding in those cases precludes us from interpreting the order of the Rush Circuit Court as being an order such as is envisioned by IC 9–4–13–10. However, we must point out that it has been held that in drafting indictments and informations the exact words of the statute need not be employed, but words which import the same meaning, if employed instead, will be sufficient. *Chandler v. State*, (1895) 141 Ind. 106, 39 N.E. 444; *State v. Anderson*, (1885), 103 Ind. 170, 2 N.E. 332. Such a construction is specifically authorized by statute. IC 35–3.1–1–14(a) provides:

"In any indictment or information an averment substantially in compliance with this section shall be deemed sufficient. *Words used in the statute to define an offense need not be strictly pursued, but other words conveying the same meaning may be used.* \* \* \* " (Emphasis added.)[4]

We do not believe that any greater adherence to the exact words of the statute is required for the order required by IC 9–4–13–10 than is required for indictments or informations charging crimes. Since words conveying the same meaning as those used in the statute are used in the order, the order here is in compliance with the statute.

■ Further, we observe that statutes of this state make it a crime for one whose driver's license has been suspended to operate a motor vehicle on the public highways while such suspension remains in force.[5] It is clear, therefore, that the legislature intended that one whose driving privileges[6] were suspended was thereby prohibited from driving a motor vehicle upon the public highways.

■ Having thus concluded that there was in effect an order prohibiting Green from operating a motor vehicle upon the public highways of this state, we turn to the question of the sufficiency of the evidence to support the conviction. When the issue of the sufficiency of the evidence to support a conviction is raised on appeal, this court will neither weigh the evidence nor

---

**3.** Among such cases cited are *Colvin v. State*, (1932) 203 Ind. 417, 180 N.E. 479; *Johns v. State* (1862) 19 Ind. 421; *State v. Squibb*, (1908) 170 Ind. 488, 84 N.E. 969.

**4.** The italicized portion of IC 35–3.1–1–14(a) is nearly identical to former Ind.Stat.Ann. § 9–1105 (Burns 1956 Repl.) which provided: "Words used in the statute to define a public offense need not be strictly pursued, but other

words conveying the same meaning may be used."

**5.** IC 9–1–4–52 and 9–1–4–53.

**6.** A driver's license includes the privilege to operate a motor vehicle upon public highways of the state. IC 9–2–1–2(n).

determine the credibility of the witnesses. Rather, the court will consider only that evidence of probative value which is most favorable to the State, together with all reasonable inferences drawn therefrom, and if, from that evidence, a reasonable trier of fact could find the existence of each element of the crime beyond a reasonable doubt, the conviction will be upheld. *Perkins v. State* (1979) Ind., 392 N.E.2d 490; *Thompson v. State,* (1979) Ind., 386 N.E.2d 682; *Mitchell v. State,* (1978) Ind., 382 N.E.2d 932; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776.

The elements of the offense of operating a motor vehicle after having been adjudged an habitual traffic offender are (1) operating any motor vehicle which is required to be registered (2) on public thoroughfares or on private property which is commonly used by the motoring public (3) by a person adjudged an habitual traffic offender (4) while the order prohibiting such person's operation of motor vehicles is in effect. *Gilbert v. State,* (1977) Ind.App., 369 N.E.2d 650.

Considering only the evidence most favorable to the State, which is the limit of our inquiry, we believe there is evidence of probative value in support of each of the elements of the offense. Although Green, his wife, and other family members testified that Green's wife, and not Green, was the driver of the truck, Captain Sheehan stated that he saw Green driving the truck and that no other person was in the truck. The next-door neighbor also testified that Green drove the truck. Green's evidence cannot be considered for at least three reasons: (1) it involves weighing the evidence, (2) it involves credibility of witnesses, and (3) Green's appeal limits the issues to the question of whether there was an order prohibiting his operation of a motor vehicle.[7]

The judgment is affirmed.

ROBERTSON, P. J., and NEAL, J., concur.

7. The same is true of a possible conflict in the evidence as to whether or not Captain Sheehan received a police radio dispatch that Green would be driving a truck on streets in Rushville.