THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

(No. C-830695—Decided June 6, 1984.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Ted Froncek, Judith A. Anton* and *Julie K. Wilson,* for appellee.

*Robert L. Cloud,* for appellant.

PALMER, J. The defendant-appellant, Frankie L. Williams, while operating a motor vehicle on April 17, 1983, was cited by police for violation of three separate offenses under the state motor vehicle laws, all said to have arisen from the instant operation: (1) operating a motor vehicle while under a license suspension, contrary to R.C. 4509.76; (2) operating a vehicle with unauthorized plates, contrary to R.C. 4549.08(C); and (3) operating a vehicle without a valid operator's license contrary to R.C. 4507.02. On May 18, 1983, the defendant appeared before a referee of the Hamilton County Municipal Court on the first two charges only, where, after waiving counsel, he entered his plea of no contest to both. Pursuant to the referee's finding, a judgment of guilty was entered as to both charges, and the assessed fine and costs were paid by the defendant.

Then, on August 10, 1983, the defendant appeared before a judge of the same court on the third of the three charges, operating a vehicle without a valid operator's license. Again waiving counsel and entering a no contest plea, the defendant was found guilty and sentenced to imprisonment of one hundred eighty days, all but twelve of which were suspended, a $500 fine and costs, and two years of probation. The defendant then secured counsel, who timely filed a motion for relief from this latter conviction, designated "Defendant's Motion For, In the Alternative, (1) Arrest of Judgment, or (2) Withdrawal of No Contest Plea, After Sentence, or (3) For New Trial." Essentially, this motion

argued for relief after judgment based on the manifest inconsistency between the earlier conviction for driving *under a suspension,* which assumes the existence of a valid, albeit suspended, operator's license, and the instant conviction for operating without a valid license. This motion was overruled, and the instant appeal resulted. A single assignment of error is presented for review, in which defendant asserts error in the judgment and sentence for violation of R.C. 4507.02 when he had been earlier convicted of violating R.C. 4509.76, and in overruling his motion for relief from that judgment.

The defendant was initially convicted of violating R.C. 4509.76, which recites:

"No person *whose license or registration or non-resident's operating privilege has been suspended* or revoked under sections 4509.01 to 4509.78, inclusive, of the Revised Code shall, during such suspension or revocation, drive any motor vehicle upon any highway * * *." (Emphasis added.)

The defendant's subsequent conviction, the subject of this appeal, was under R.C. 4507.02, which reads, in relevant part:

"No person * * * shall operate any motor vehicle upon a highway * * * unless such person, upon application, has been licensed as an operator or chauffeur by the registrar of motor vehicles under section 4507.01 to 4507.39, inclusive, of the Revised Code."

Facially, the two statutes would appear to describe wholly separate and disparate offenses: the latter proscribes operation without a license; the former forbids operation when a license has been suspended. The defendant argues that one cannot, by definition, be guilty *at the same time* of operating a vehicle under a suspended license and operating a vehicle without a license. Under these circumstances, he insists, the offenses are clearly mutually exclusive. If the defendant on April 17, 1983, possessed an otherwise valid operator's license, which clearly appears to have been the case,[1] and driving privileges thereunder had earlier been suspended, as defendant concedes, the appropriate charge was R.C. 4509.76, not 4507.02. We agree.

Indeed, the state's grievance against the defendant for the instant single act was effectively concluded by the initial court proceedings on May 18, 1983, when he was found guilty of and was sentenced for operating his vehicle under suspension contrary to R.C. 4509.76. Putting aside the undisputed evidence in the record of the defendant's possession of an unexpired, albeit suspended, operator's license,[2] a fact which would have rendered any judgment of guilty of R.C. 4507.02 contrary to law even absent the previous history, see *Cincinnati* v. *Tribble* (1983), 7 Ohio Misc. 2d 46, a well-reasoned decision by Judge Painter of the court in question, the issue was one which, at the outset, the state should have been held collaterally estopped to raise. See *Ashe* v. *Swenson* (1970), 397 U.S. 436; *State* v. *Tolson* (1973), 34 Ohio Misc. 55 [63 O.O.2d 217]. In the initial prosecution under R.C. 4509.76, the court necessarily determined the issue that the defen-

---

[1] The traffic complaint form shows that the defendant had been issued License NU 322846 in October 1981, with an expiration date of May 15, 1983.

[2] See fn. 1, *supra,* and the trial transcript, where the defendant informs the court that, "At that time [*i.e.,* April 17, 1983], your Honor, my license had been under suspension but I got a security bond and they sent it in to Columbus and it was supposed to make me able to drive. At the same time [*sic*], my license expired on my birthday [*i.e.,* May 15, 1983]."

dant had been awarded a valid operator's license pursuant to R.C. Chapter 4507, since that is an obvious and essential precondition of a license suspension. One cannot suspend something which does not exist. So much appears to be conceded by the state.[3] That issue having been finally determined, the state is estopped subsequently to assert that the defendant operated the vehicle at the same time and place without having "been licensed as an operator * * * by the registrar of motor vehicles," as is required under R.C. 4507.02.

The state argues, however, that R.C. 4507.02 must be said to require operation under a *currently effective and valid operator's license,* and that operation under a *suspended* license, although otherwise valid, is not such operation in compliance with the statute. This argument, if accepted, would obviously involve every individual operating a vehicle under suspension in two criminal violations for the precise same act, an interpretation which would appear to raise its own problems under the allied offense statute, R.C. 2941.25. The point is, however, unnecessary to consider since we do not read the language of R.C. 4507.02 as the state would have it. Once having been issued an operator's license which is otherwise valid and unexpired, one does not violate R.C. 4507.02 by operating a vehicle while such license is suspended under R.C. Chapter 4509. He may be guilty of violating R.C. 4509.76, as had properly been determined here, but not R.C. 4507.02.[4]

The state objects to the application of principles of *res judicata* and/or collateral estoppel to the instant case, pointing out that the precedents for application of these doctrines involve cases, unlike the present, where the defendant was earlier *acquitted* of an offense. For obvious reasons, this sequence of events will generally be the rule, but the use of that aspect of the double jeopardy rule called collateral estoppel in cases like the instant one is certainly not unprecedented. See, *e.g., State* v. *Emery* (1958), 27 N.J. 348, 142 A.2d 874. Nor have we been favored with any convincing reasons why it should not apply under the facts *sub judice.*[5]

We conclude that the defendant's assignment of error is meritorious and accordingly reverse the judgment below,

---

[3] "To convict under § 4509.76, the prosecution must prove (1) a person had a valid driver's license; (2) it was revoked or suspended; and, (3) that person drove upon a highway while the license was suspended."

[4] The state additionally cites the decision of this court in *Hadden* v. *Curry Ford, Inc.* (1970), 27 Ohio App. 2d 132 [56 O.O.2d 291], as authority for its argument that a licensee under suspension has no license within the meaning of R.C. 4507.02. *Hadden,* however, was a civil case involving the interpretation of language in an insurance contract of the phrase *"qualified* licensed driver." (Emphasis added.) It is wholly inapposite to the instant question.

[5] But, see, *State, ex rel. Susi,* v. *Flowers* (1975), 43 Ohio St. 2d 11 [72 O.O.2d 6], certiorari denied (1975), 423 U.S. 1006. While there is language in this case which might be thought supportive of the state's position, the actual facts of the case did not require a decision on the point. The reliance of the defendants in that case was on the so-called "same transaction test" espoused by Justice Brennan in his concurring opinion in *Ashe* v. *Swenson, supra,* a test never adopted in this state. Here, unlike *Flowers* and *Ashe,* the question is whether the state, in successive trials of different offenses growing out of the same transaction or conduct, may maintain *directly contradictory positions* on an issue or element common to both trials, the first trial having resulted in a determination of the common issue favorable to the state and against the defendant. If we are not to call it "collateral estoppel," which seems most appropriate, then we must call it by some other name which describes the simple justice or due process of law which would seem to be involved.

and order the defendant discharged therefrom.

*Judgment reversed.*

KEEFE, P.J., and KLUSMEIER, J., concur.